[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10546

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 7, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00138-CV-CDL-4

HENRY COOK,

Plaintiff-Appellant,

versus

RANDOLPH COUNTY, GEORGIA,
RANDOLPH COUNTY DEPARTMENT OF REGISTRATION
AND ELECTIONS, VOTER REGISTRATION DIVISION,
HONORABLE LINDA JACKSON, Individually,
and in her official capacity as Superintendent
of Elections for Randolph County, Georgia,
WINONA JOHNSON, Individually and in her
official capacity as Deputy Registrar of
Randolph County, Georgia,
LORRAINE CURRY, Individually and in her
official capacity as Deputy Registrar
of Randolph County, Georgia,
CAROL RAY, Individually, and in her
official capacity as Chief Registrar
of Randolph County, Georgia,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Georgia

(July 7, 2009)

Before TJOFLAT and CARNES, Circuit Judges, and HOOD,[*] District Judge.

CARNES, Circuit Judge:

As Justice Holmes once remarked, "pretty much all law consists in forbidding men to do some things that they want to do." Adkins v. Children's Hospital, 261 U.S. 525, 568, 43 S. Ct. 394, 405 (1923) (Holmes, J., dissenting). In this case the Randolph County Board of Registrars wanted to change the voting registration of Henry Cook, a member of the county's board of education, which also would have changed the district from which he could run for office. The law that prevented the board from doing that is § 5 of the Voting Rights Act of 1965, 42 U.S.C. §1973c, enforced by an injunction that was obtained in a lawsuit filed by some of Cook's constituents; that injunction required preclearance and the Department of Justice refused to grant it. This appeal is not about the preclearance requirement. Instead, it involves Cook's separate lawsuit and his insistence that even though the Board of Registrars' attempt did not succeed, he is still entitled to

_____

[*] Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

an injunction against and monetary relief from the members of the Board and the County.

## I.

Henry Cook is an African American man who has served on the Randolph County Board of Education as a representative of District 5 ever since 1993. He continues to serve on that Board (and as its chairman). District 5 is a predominantly African-American voting district, and Cook has been outspoken about funding for that district's schools. District 4 is predominantly white. Each school district is represented on the board of education by someone who lives within that district; there are no at-large representatives.

After the 2000 census, the Randolph County election maps were redrawn and approved by the legislature. In 2002 a redistricting plan was submitted to the Department of Justice for preclearance approval as required by § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. On the map showing the proposed districts, the line between Districts 4 and 5 runs right through Cook's 8-acre property. Most of his land is in District 5, but his house is in District 4. During the preclearance process, a dispute arose about where Cook would be considered to reside for voting purposes, and the County assured the Department of Justice that Cook would still be considered to reside in District 5. That representation

3

induced the Department's September 30, 2002 decision to grant preclearance to the redistricting map, which was expressly conditioned on Cook's voting district not being changed. Cook thereafter received a "new" voter registration card showing that he was still a registered voter in District 5, just as he had been before.

On October 11, 2002, however, Lee Norris Jordan challenged whether Cook could run for reelection to the Board of Education's District 5 seat, asserting that he did not actually reside in that district. Jordan, who is also African American, was running against Cook for that district's seat on the Board of Education. The county election superintendent was Linda Jackson, but she recused herself from deciding the matter because during the preclearance process she had assured the Department of Justice that Cook would remain in District 5. Because of that recusal, Superior Court Judge Gary McCorvey was appointed to serve as election superintendent to decide the challenge. As acting election superintendent, Judge McCorvey held a hearing on the matter on October 22, 2002. Six days later he issued a decision concluding that "the residence of Henry L. Cook is within the boundaries of such 'new' district five as contemplated by the Laws and Constitutions of both the State of Georgia and the United States of America." In November of 2002 Cook was reelected to the Board of Education from District 5.

4

Because Jordan waited until after the election to appeal the acting election superintendent's decision, the Superior Court of Randolph County dismissed his appeal as moot, and the Supreme Court of Georgia affirmed that dismissal. Jordan v. Cook, 587 S.E.2d 52 (Ga. 2003).

Even though the relevant facts and law had not changed, on January 30, 2006 the three members of the Randolph County Board of Registrars (defendants Carol Ray, Winona Johnson, and Lorraine Curry), all of whom are white, held a specially called meeting and voted unanimously to change Cook's voter registration from District 5 to 4. The minutes of their meeting state that it "was publicized twenty-four (24) hours in advance via the courthouse bulletin board and the local legal organ, The Southern Tribune." Cook says that he was not given any prior notice. In regard to the reason for the change, the minutes state:

> Our decision was based on the following facts: (1) first and foremost it is our duty as voter registrars to establish the correct precinct and district of eligible registered voters. (2) No city taxes are paid on the land owned by Henry L. Cook at Rt. 1 Box 220 Howell Mill Road, indicating he is not in the city limits which would be district five (5). He accepts homestead exemption and purchases car tags at the above mentioned address. He has been billed for county taxes, that were due no later than December 20, 2005, and as of today (January 30, 2006) they have not been paid. (3) All neighbors around him are in district four (4).

(capitalization altered). The minutes also note that Georgia Code § 21-2-226(b) gives the Board of Registrars the duty "to determine and place any eligible

5

registered voter in the proper" district.

In February 2006, Cook received notice that his voting district had been changed. The deadline for qualifying to run for the Board of Education was April 28, 2006. Because of the Board of Registrars' action, Superintendent of Elections Jackson would not provisionally qualify Cook to run from District 5.

## II.

On April 17, 2006, two related lawsuits were filed. Cook filed one in the Superior Court of Randolph County, Georgia. In addition to the three members of the Board or Registrars, it named as defendants: Randolph County; the Randolph County Department of Registration and Elections, Voter Registration Division; and Linda Jackson, the superintendent of elections. All of the individual defendants were sued in both their individual and official capacities. The original complaint in that lawsuit claimed that the defendants had conspired to remove Cook from his district because of racial animosity and also that he was not given notice or an opportunity to be heard. It sought "to compel defendants to place [Cook] back into his correct district from which he was removed by Defendants' illegal conduct." The complaint requested an injunction ordering the defendants to place him back in District 5 and restraining any other candidates from registering to run for the District 5 seat on the Board of Education until Cook was

6

reassigned to that district. It also sought monetary damages, attorney's fees, and costs.

On the same day that Cook filed his lawsuit in state court, some of his constituents filed another one in federal district court against the same individual defendants, as well as some others, seeking injunctive relief under § 5 of the Voting Rights Act. See Jenkins v. Ray, No. 4:06-CV-43, 2006 WL 1582426 (M.D. Ga. June 5, 2006) ("the Jenkins lawsuit"). Cook was not a party to that lawsuit. The Jenkins plaintiffs asked the court to enjoin the defendants from removing Cook from District 5 without preclearance from the Department of Justice. They also requested attorney's fees under 42 U.S.C. §§ 1988 and 1973e. The Jenkins plaintiffs prevailed. On June 5, 2006, the district court issued an injunction barring "further use of the changes at issue absent preclearance [from the Department of Justice] under Section 5 [of the Voting Rights Act]." Id. at *3.

The Department of Justice denied preclearance in a letter dated September 12, 2006. It concluded that the County had failed to meet its burden of showing that the proposed change (the reassignment of Cook from District 5 to 4) did not have a discriminatory purpose. In reaching that conclusion, the letter noted that "the County [had] formally determined—and advised this Department—that Mr. Cook was an eligible voter and candidate for office in District 5" during the

7

Department's review of the proposed redistricting following the 2000 census.

Concerning the reassignment of Cook to District 4 in 2006, the letter stated:

> This sequence of events is procedurally and substantively unusual. The Board [of Registrars] resurrected the issue of Mr. Cook's residency after it had been settled for three years, without any intervening change in fact or law, and without notifying Mr. Cook that it was doing so. Moreover, it is particularly unusual for officials with no legal training to overturn, in effect, a decision by a judge in order to disturb an incumbent officeholder.[1]

As a result of the Department of Justice's refusal to preclear the change in Cook's voter registration, he remained registered in District 5 and was qualified to run for re-election from that district in the 2006 election. He did run and was re-elected to the Board of Education from District 5. He still holds his position, as he has for the past fifteen years.

Notwithstanding his electoral victory, Cook proceeded with his lawsuit, which eventually led to this appeal. On November 15, 2006, five months after the federal district court had issued its decision in <u>Jenkins</u> and two months after the Department of Justice had denied preclearance to the change in his voting

---

[1] We note that, although it does not affect the outcome in this lawsuit, the Department's letter indicates that it assumed that Gary McCorvey was acting in his judicial capacity when he made a decision about Jordan's challenge to Cook's residency. If that was the assumption, it is is wrong. McCorvey was acting solely as superintendent of elections, and he was doing that because the non-judge who usually served in that position had recused herself.

registration, Cook filed a second amended complaint in his state court action.[2]  In it Cook asserted for the first time claims under 42 U.S.C. §1983 alleging that the defendants had:  (1) violated his "procedural and substantive due process rights and liberty rights under the 5th and 14th Amendments"; (2) discriminated and retaliated against him based on race in violation of his "Constitutional right of due process and equal protection under the 14th Amendment"; (3) interfered with his right to vote and to be a candidate for public office in violation of his "Constitutional rights under the 13th, 14th, and 15th Amendments"; (4) interfered with his right to vote and run for public office as well as other rights in violation of his "Constitutional rights under the 1st Amendment"; (5) violated his rights under § 5 of the Voting Rights Act of 1965 and his rights under 42 U.S.C. § 1985; (6) violated his due process and equal protection rights under the 1st, 13th, 14th, and 15th Amendments; and (7) violated his rights to make, enforce, and enter into a contract in violation of 42 U.S.C. § 1981.  The second amended complaint demanded damages, attorney's fees, and costs under 42 U.S.C. §§ 1983, 1985, 1988, 1981, and 1973.

---

[2] Cook's first amended complaint was filed on June 5, 2006.  It amended the original complaint "for misnomer to make the style of the case consistent with the pleadings" by adding Winona Johnson and Lorraine Curry as defendants in both their individual and official capacities.

On November 30, 2006, the defendants removed the lawsuit to federal court based on federal question jurisdiction. Cook filed a timely motion to remand, which the district court denied.

The defendants filed a motion for summary judgment on all of Cook's claims, and after a hearing the district court granted that motion on January 4, 2008. In analyzing the motion the district court divided Cook's claims into a "claim for injunctive relief," which it held was moot because that relief had already been granted in the <u>Jenkins</u> lawsuit, and "damages claims." The court did not, however, dismiss the claims as moot insofar as they sought injunctive relief. Instead, it granted summary judgment, not on the merits but on mootness grounds.

The court then took up Cook's "damages claims," which it listed as follows:

> (1) deprivation of his right to be free from race discrimination, in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Thirteenth and Fifteenth Amendments, and 42 U.S.C. § 1981; (2) interference with his right to vote and his right to run for public office, in violation of the First and Fourteenth Amendments; (3) deprivation of his right to procedural due process, in violation of the Fourteenth Amendment; and (4) conspiracy to deprive him of his rights, in violation of 42 U.S.C. § 1985.

The court also listed as a damages claim Cook's claim that the defendants had violated Georgia law.

Insofar as damages were sought from the individual defendants, the district

court concluded that they were entitled to qualified immunity. The court reasoned that there was no evidence that the individual defendants had deprived Cook of his substantive rights under 42 U.S.C. § 1981 or the First, Thirteenth, Fourteenth, or Fifteenth Amendments. The court noted that defendant Jackson did not even participate in the attempt to change Cook's voting registration, and for that reason could not be liable for attempting to deprive Cook of any right not to have his registration changed. As to the other individual defendants (Ray, Johnson, and Curry), the district court found there was no evidence that their decision to reassign Cook to District 4 deprived him of any right. Because Cook was allowed to vote and run for office from District 5 "[a]t all times in 2006," the attempted reassignment did not interfere with his rights. The court also found that there was no evidence that Ray, Johnson, or Curry had considered Cook's race in deciding to reassign him to District 4. Because Cook had failed to show that he was deprived of any substantive right, the court held that the individual defendants were entitled to qualified immunity on the claims against them.

The court next considered Cook's claim that he was deprived of procedural due process because he did not get notice and a hearing before the January 30, 2006 meeting at which the registrars decided to change his voting district. The court set out the requirements: "In this circuit, a § 1983 claim alleging a denial of

procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). The court reasoned that "[a]s a registered elector in District 4, plaintiff retained the right to cast a ballot and to run for public office." In other words, Cook was never actually deprived of those rights. The court concluded that even if there is a constitutionally protected liberty or property interest in being assigned to a particular voting district, Cook's rights were not violated because he was never actually deprived of his right to vote and run for office in District 5. Therefore, the individual defendants were entitled to summary judgment on the procedural due process claims.

The court went on to decide whether Randolph County was liable, because the claims against the individual defendants in their official capacities were really claims against the County. Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) ("[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent.") (quotation marks omitted)). The district court found that the evidence did not support Cook's allegations of constitutional or statutory violations and that he had not provided evidence of a county policy or custom that

had deprived him of his rights. For these reasons, the court granted summary judgment to all of the defendants on Cook's "claims for damages under 42 U.S.C. § 1983."

The court separately considered Cook's 42 U.S.C. § 1985(3) conspiracy claim. It correctly listed the elements of a § 1985(3) conspiracy as follows:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Childree v. UAP/GA CHEM, Inc., 92 F.3d 1140, 1147 (11th Cir. 1996). The court found that even if Cook had presented enough evidence on elements one and three, he had failed to show that he had been "injured in his person or property or deprived of any right or privilege of a citizen of the United States," the fourth element. On that basis, the court concluded the defendants were entitled to summary judgment on Cook's conspiracy claim.

Finally, the court concluded that the defendants were entitled to summary judgment on Cook's state law claims. It reasoned that the equal protection and due process guarantees under the United States Constitution and the Georgia Constitution are the same. For that reason, Cook's claims under the Georgia

13

Constitution suffered from "the same fatal flaw" as the claims that he brought

under the United States Constitution—he had failed to show that the defendants

had deprived him of a protected right.

This is Cook's appeal of the final judgment entered against him.

**III.**

Cook's threshold contention is that the district court erred in denying his

timely motion to remand the lawsuit to state court. He argues that the district

court lacked subject matter jurisdiction because the notice of removal was

procedurally defective for two reasons. One reason he asserts is that the

defendants did not attach to their notice of removal all of the pleadings, process,

and orders from state court.

This is the statutorily prescribed procedure for filing a notice of removal:

> A defendant or defendants desiring to remove any civil action or
> criminal prosecution from a State court shall file in the district court
> of the United States for the district and division within which such
> action is pending a notice of removal signed pursuant to Rule 11 of
> the Federal Rules of Civil Procedure and containing a short and plain
> statement of the grounds for removal, together with a copy of all
> process, pleadings, and orders served upon such defendant or
> defendants in such action.

28 U.S.C. § 1446(a). To begin with, the failure to include all state court pleadings

and process with the notice of removal is procedurally incorrect but is not a

jurisdictional defect. See Covington v. Indemnity Ins. Co. of N. Am., 251 F.2d 930, 933 (5th Cir. 1958);[3] see also Usatorres v. Marina Mercante Nicaraguenses, S.A., 768 F.2d 1285, 1286 (11th Cir. 1985); 14C Charles Alan Wright, et al., Federal Practice and Procedure § 3733 (2008) ("The failure to conform to these procedural rules is not a jurisdictional defect, and both the failure to file all the state court papers or to provide the Rule 11 signature are curable in the federal court if there is a motion to remand.").

Besides, we are not persuaded that the defendants failed to attach "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a); see also Usatorres, 768 F.2d at 1286. Cook's motion to remand asserted in a conclusory fashion that "defendants did not meet the procedural requirements for removing [this case] as is shown on the face of the Notice of Removal." He argued in support of his motion that "it is apparent that defendants have not filed all of the pleadings in the state court proceeding." But the defendants were not required to file all of the pleadings from the state court proceeding, only those that were served on them. See 28 U.S.C. § 1446(a); Usatorres, 768 F.2d at 1286. Cook still has not specified which state court

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

15

process, pleadings, or orders that were served on the defendants were missing from the defendants' notice of removal. The district court properly rejected Cook's "vague contention that Defendants' removal was procedurally defective in some way."

Cook also contends that the removal was improper because the removal notice did not show that all of the defendants consented. He is correct that removal is proper only if all of the defendants consent, see Bailey v. Janssen Pharmaceutica, Inc., 536 F.3d 1202, 1207 (11th Cir. 2008), but we have never required that every defendant individually sign the notice of removal in order to establish unanimous consent. This notice of removal stated in its first sentence that "[a]ll defendants, by counsel, hereby file a Notice of Removal. . . ." The notice was signed by the attorney who represented all of the defendants. As their attorney, she was authorized to represent to the court what their positions were and they were bound by the representations she made. See Burdis v. Texas & P. Ry. Co., 569 F.2d 320, 324 n.3 (5th Cir. 1978) (concluding that "a pleading, prepared by an attorney, is admissible and binding upon the pleading party"). Requiring the additional formality of each defendant individually signing the removal notice would impose a pointless burden. No one contends that any of the defendants did not want the case removed. Absent some basis for believing that, the

16

representation of the attorney for the defendants that all of her clients consented to the removal is enough.

## IV.

We now turn to the merits, reviewing de novo the district court's decision to grant summary judgment to the defendants on all of the claims. See Ellinger v. United States, 470 F.3d 1325, 1332 (11th Cir. 2006).

Cook's second amended complaint, which is the one before us in this appeal, incorporates by reference the factual allegations and legal claims in the two previous complaints and then piles on them a slew of claims stated in only the most conclusory fashion. The § 1983 claims include everything from alleged violations of his substantive and procedural due process rights under the 5th and 14th Amendments, to violation of his equal protection rights under the 14th Amendment, to interference with his right to vote and to be a candidate under the 13th, 14th, and 15th Amendments and retaliating against him because he exercised those rights (some or all of these claims are alleged in more than one place), to violation of his 1st Amendment rights of "political association, political beliefs, and freedom of speech and association rights and right to petition the government." Cook throws on top of those claims another one for violation of his right to vote and be a candidate for office and be free of retaliation for exercising

17

those rights, all in violation of § 5 of the Voting Rights Act. He also heaps on the pile a 42 U.S.C. § 1985 claim for conspiracy to interfere with his right to vote and be a candidate for public office and be free of retaliation based on race. Finally, he adds for good measure a 42 U.S.C. § 1981 contract claim that asserts, without explanation, that the interference with his right to vote and be a candidate for public office and retaliating against him because of his race "violated Plaintiff's rights to make, enforce, and enter into a contract."

Cook's second amended complaint is a shotgun pleading. We have had much to say about shotgun pleadings, none of which is favorable. See, e.g., Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 979 n.54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.9 (11th Cir. 2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."); Byrne v. Nezhat, 261 F.3d 1075, 1131 (11th Cir. 2001) ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice."); Anderson v. District Bd. of Trs. of Central Fla. Cmty. Coll., 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's

docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

Attempting to impose order on the chaos, we begin with the claims that Cook has pleaded as §1983 claims. His second amended complaint identifies those § 1983 claims as arising under the 1st, 5th, 13th, 14th, and 15th Amendments, under § 5 of the Voting Rights, and under 42 U.S.C. § 1985. All of those claims require Cook to show that he was actually deprived of a constitutional liberty interest or a substantive federal right. See Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir. 1999) (providing that to prevail on a § 1983 claim, "plaintiffs must demonstrate both that the defendants deprived them of a right secured under the Constitution or federal law and that the deprivation occurred under color of state law"). He has not shown that, and the undisputed facts prevent him from doing so.

The Constitution certainly protects the right to vote. Reynolds v. Sims, 377 U.S. 533, 554, 84 S. Ct. 1362, 1377–78 (1964) ("Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections.").[4] Citizens also have a constitutionally protected right to

---

[4] Cook alleges violations of his voting rights under various constitutional amendments, including the First and Thirteenth. The inclusion of those amendments, like much of the second amended complaint, is redundant. See Burton v. City of Belle Glade, 178 F.3d 1175, 1188 n.9

19

run for public office.  See McCormick v. Edwards, 646 F.2d 173, 175 (5th Cir. 1981) (stating that a non-civil service employee "like all citizens, has a constitutionally protected right to actively support, work for and campaign for a partisan candidate for political office or even to run for such office himself").[5] The Constitution guarantees procedural and substantive due process when a liberty interest is at stake.  See Grayson, 460 F.3d at 1340 (stating that "procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment") (quoting Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976) (quotation marks omitted)); Duncan v. Poythress, 657 F.2d 691, 705 (5th Cir. 1981) (holding that one of the substantive guarantees of the due process clause is "the right to be free from the purposeful decision of state officials to deny the citizens of a state the right to vote in an election mandated by law").  The Constitution also provides for equal protection. See Burton, 178 F.3d at 1188–89 ("[T]o establish a violation of either the Equal Protection Clause of the Fourteenth Amendment or the Fifteenth Amendment, [the plaintiff] must show that the [defendant's] decision or act had a discriminatory

(11th Cir. 1999) ("[T]he First and Thirteenth Amendments afford no greater protection for voting rights claims than that already provided by the Fourteenth and Fifteenth Amendments.").

[5] See footnote 3, supra.

purpose and effect.") (emphasis added).

The problem with Cook's § 1983 claims is that he did not actually suffer a deprivation of any of the constitutional or statutory rights he asserts. All of Cook's claims are stated as though his voting registration was changed from District 5 to District 4. It was not. Because of the Jenkins injunction and the Department of Justice's denial of preclearance, the registrars' effort to change Cook's voting registration failed. The attempt accomplished nothing. It was a non-starter because moving Cook's voting residence required preclearance, which was never granted. See Lopez v. Monterey County, 519 U.S. 9, 20, 117 S. Ct. 340, 347 (1996) ("A jurisdiction subject to § 5's requirements must obtain either judicial or administrative preclearance before implementing a voting change. No new voting practice is enforceable unless the covered jurisdiction has succeeded in obtaining preclearance.").

All of Cook's claims rest on the premise that an unsuccessful attempt to deprive him of constitutional or statutory rights is a deprivation of those rights. It is not. Assuming for the sake of argument that Cook has a constitutional right to vote in and run for office in a particular district, the attempt to deprive him of that right did not succeed. And that makes all the difference. See Andree v. Ashland County, 818 F.2d 1306, 1312 (7th Cir. 1987) (holding that "the mere unsuccessful

21

attempt to secure an injunction under an allegedly unconstitutional ordinance does not itself make out a deprivation of constitutional rights"); Villanueva v. McInnis, 723 F.2d 414, 419 (5th Cir. 1984) (stating that "[w]hile [plaintiff's] liberty or life interests may for a brief period have been sufficiently threatened to warrant injunctive relief the distance to a deprivation of liberty or life was here too great to lend definition to the constitutional right allegedly lost").

The Fifth Circuit has analyzed the issue of whether an unsuccessful attempt to deprive someone of his constitutional rights is actionable under § 1983, and we are persuaded by the logic of its decision. See Villanueva, 723 F.2d at 418–19. In Villanueva the court reversed the judgment on a jury verdict awarding Villanueva $90,000 in damages (plus attorney's fees) based on his claim that former district attorney Oscar B. McInnis had conspired to murder him. 723 F.2d at 414–16. While Villanueva was incarcerated in a county jail, McInnis entered into an agreement with an inmate, Daniel Rodriguez, to murder Villanueva. Id. at 415–16. McInnis said he would try to get Rodriguez released from jail in exchange for his help, and Rodriguez actually contacted a hit man in Mexico to have Villanueva murdered. Id. at 416. Rodriguez then began to worry that McInnis was setting him up, so he cancelled the hit. Id. He told the sheriff and the FBI about the scheme, and they instructed him to continue his interactions with

22

McInnis as if the hit were still planned.  Id.  Villanueva did not learn that there had

been an aborted plan to have him murdered until after he had been released.  Id.

Villanueva filed a lawsuit against McInnis, bringing claims for

constitutional violations under § 1983 based in part on the conspiracy to murder

him.  Id.  The Fifth Circuit held that § 1983 "reaches no further than deprivation of

a federally protected or constitutionally secured right or privilege."  Id. at 418.  It

reasoned that there was no deprivation of a federal right:

> Villanueva alleged and, we may assume, proved, a conspiracy to
> murder. He points to no other claimed deprivation. Of course murder
> without due process by a person acting under color of state law denies
> a federal right, but here there was no murder. As is apparent there was
> only an "agreement" to murder. After Rodriguez informed the state
> and the FBI and acted as an informant there was no actual threat that
> the "conspiracy" would be carried out.

Id. (internal citation omitted).  The court emphasized that a plaintiff has "to prove

an actual deprivation of a constitutional right; a conspiracy to deprive is

insufficient."  Id.  The court concluded:

> That the agreement between McInnis and Rodriguez was illegal or
> even "unconstitutional" in an abstract sense such as might be posed
> by a quo warranto inquiry does not answer the question raised by this
> private suit for money damages. We are unable to identify in this
> inchoate "agreement" an actual deprivation of any constitutional right
> of Villanueva. Villanueva's argument that he has a constitutional
> right to be free of a conspiracy to murder begs the question of
> deprivation. While Villanueva's liberty or life interests may for a
> brief period have been sufficiently threatened to warrant injunctive

23

> relief the distance to a deprivation of liberty or life was here too great to lend definition to the constitutional right allegedly lost. Implicit in a deprivation is both a defined right and a loss. Stated differently and in sum this claimant has proved no loss of constitutional right.

Id. at 418–19 (footnote omitted).

Like the plaintiff in Villanueva, Cook failed to show he lost a constitutional or statutory right. Because of the Jenkins injunction and the Department of Justice's denial of preclearance, Cook was able to continue voting in and running for office from District 5. He won the 2006 election. His tenure on the Board of Education was not interrupted. Nothing changed. Because Cook was never actually deprived of his rights to vote in or run for office from District 5, he suffered no loss of any constitutional or statutory right.

Cook argues that his constitutional and statutory rights were violated because he was forced to spend money on lawyers in order to bring this lawsuit. We are unconvinced by that argument for several reasons. To begin with, Cook has not established its factual premise. He has not shown that he has spent or will spend any money on attorney's fees. Cook's contract with his attorneys was never put into evidence. For all we know from the record, Cook had a pure contingency arrangement with them.[6]

---

[6] At the hearing on the defendants' motion for summary judgment, counsel for Cook stated that the County had spent over $200,000 on attorney's fees. Counsel did not state,

24

Even if Cook has paid or will pay his attorneys, we are not persuaded by his argument that his payment of legal costs means that his federal rights have been violated. The argument seems circular, positing the cost of bringing a lawsuit as the reason it must succeed. Cook has cited no authority for the proposition that conduct which causes a person to hire attorneys to vindicate his federal constitutional or statutory rights violates those rights. Cf. Andree, 818 F.2d at 1312 (holding that plaintiffs' costs in defending an injunction action brought against them in state court based on an allegedly unconstitutional ordinance "are not recoverable as a substantive item of damage under section 1983 in the absence of some showing that the [injunction action] was brought for some ulterior purpose"); Burton, 178 F.3d at 1188 (stating that a plaintiff with a § 1983 claim has to show that person acting under color of state law deprived him of a constitutional right).

It was Cook, and not the defendants, who chose to file this lawsuit. Even if he had not filed it, his rights to vote in and run for public office from District 5 would have been secured by the Jenkins lawsuit and the Department of Justice's denial of preclearance. Cook not only chose to bring this lawsuit, he also chose to amend his complaint to add the claims he is now pursuing and to seek damages

however, how much, if any, Cook had spent on his fees.

25

after his rights to vote and run for office in District 5 already had been secured through the Jenkins injunction and the denial of preclearance.

Except where there is a fee-shifting provision, each party bears the cost, including attorney's fees, of litigation. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616 (1975); Johnson v. Florida, 348 F.3d 1334, 1350 (11th Cir. 2003); Loggerhead Turtle v. County Council of Volusia County, 307 F.3d 1318, 1322 (11th Cir. 2002) ("Under the 'American Rule' of civil litigation, parties to a lawsuit ordinarily pay their own attorney's fees."). It would turn the American rule on its head to hold that requiring a plaintiff to bear the cost of litigation amounts to the denial of a constitutional or statutory right. See Tejas Dev. Co. v. McGough Bros., 167 F.2d 268, 269 (5th Cir. 1948) ("In pressing their third party claims as and when they did the third party plaintiffs took the risk and must bear the consequences of futile costs."); Employers Reinsurance Corp. v. Mid-Continent Cas. Co., 358 F.3d 757, 766–67 (10th Cir. 2004) ("[T]he American Rule . . . ordinarily bars the recovery of attorney fees by the prevailing party in litigation, on the theory that such fees are a cost of recovering damages, not damages in themselves.").

Fee shifting statutes such as 42 U.S.C. § 1988 might have provided a vehicle for the district court to award Cook attorney's fees if he had prevailed on

26

the merits, but prevailing requires a plaintiff to bring about a material alteration in his legal relationship with the defendants. See Buckhannon Bd. and Care Home, Inc. v. West Va. Dep't of Health and Human Res., 532 U.S. 598, 622, 121 S. Ct. 1835, 1849 (2001) (rejecting the "catalyst" theory and holding that "a party cannot be deemed to have prevailed, for purposes of fee-shifting statutes such as 42 U.S.C. §§ 1988 . . . unless there has been an enforceable alteration of the legal relationship of the parties") (quotation marks omitted). Even when defendants give in and change their conduct in the way that a plaintiff desires, the change has to be brought about by means of judicial decree. See id. at 604, 121 S. Ct. at 1840 ("[E]nforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees."). It was not Cook's lawsuit that resulted in a decree altering the legal relationship of the parties by prohibiting the Board of Registrars from changing his voting district. That decree came in the Jenkins case, one to which Cook was not a party. For these reasons, Cook's argument that any legal cost he may have incurred in filing this lawsuit establishes that his constitutional or statutory rights were violated is inconsistent with the American rule on attorney's fees and with the Supreme Court's rejection of the catalyst theory in deciding who is a prevailing party.

What we have said so far applies to all of the claims Cook pleaded as arising under § 1983. One of those claims warrants separate mention. It is that the defendants' attempt to change Cook's voting "violated Plaintiff's voting rights under § 5 [of] the Voting Rights Act of 1965, codified at 42 U.S.C. § 1973 which may be remedied through 42 U.S.C. § 1983." The attempt, made clear in a later paragraph of the second amended complaint, is to obtain monetary damages for a violation of § 5.

The Supreme Court has held that private parties have an implied right of action under 42 U.S.C. § 1973c to "seek a declaratory judgment that a new state enactment is governed by [§] 5." Allen v. State Bd. of Elections, 393 U.S. 544, 555, 89 S. Ct. 817, 826 (1969). And "the private party has standing to obtain an injunction" in the appropriate circumstances. Id. Neither the Supreme Court nor this Court has ever held, however, that private parties have an implied right of action for monetary damages under § 5. Cook cites no decision holding that, and he has not persuaded us to hold that. Damages may be available for constitutional violations arising from actual deprivations of the right to vote based on intentional racial discrimination, but not under § 5 of the Voting Rights Act. Cf. Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U, 46 F.3d 682, 686 (7th Cir. 1995) (stating in a case involving claims brought under § 1983 that "[m]ost voting-rights

28

cases seek equitable relief, but damages too are available for a racially motivated deprivation of the right to vote.") (citing Nixon v. Herndon, 273 U.S. 536, 47 S. Ct. 446 (1927) (Holmes, J.)).  The one thing that Cook might have been entitled to under § 5 is injunctive relief, and that had already been provided in the Jenkins lawsuit before he amended his complaint to bring this claim.[7]

In addition to pleading a violation of 42 U.S.C. § 1985 as part of his § 1983 claims, Cook has proceeded as though he had also pleaded a free-standing § 1985(3) claim.  Perhaps confused by the shotgun pleading, the defendants responded as though the claim were separate, and the district court decided it that way.  For the sake of completeness, we will, too.

The elements of a § 1985(3) claim are:

(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is

---

[7] In one of his briefs to us Cook states that he is seeking "the equitable remedy of a permanent injunction as a personal protection against further misuse of the legal process to deny him the right to run in the district where he legally resides."  Because of the injunction issued in the Jenkins lawsuit and the denial of preclearance, the request for an injunction in this case is moot.  See Sheely v. MRI Radiology Network, 505 F.3d 1173, 1183 (11th Cir. 2007) ("If events that occur subsequent to the filing of a lawsuit deprive the court of the ability to give the plaintiff meaningful relief, then the case is moot and must be dismissed.") (quotation marks and alterations omitted).  That is true regardless of whether the request for injunctive relief is moored to § 5 of the Voting Rights Act or is a free-floating one.

either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Trawinski v. United Techs., 313 F.3d 1295, 1299 (11th Cir. 2002) (quotation marks omitted). We have explained and Cook acknowledges that "[t]he purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law." Id. Therefore, "a claim under § 1985(3) requires the proof of invidious discriminatory intent as well as the violation of a serious constitutional right." Id. The district court determined that the defendants were entitled to summary judgment on Cook's § 1985(3) claim because Cook had failed to establish that he was injured in his person or property or deprived of any right or privilege of a citizen of the United States. That is essentially what we have already said about the claims Cook brought under § 1983.

Cook argues that voting rights and the right to be a political candidate should be of core concern under § 1985(3). He insists that there was a scheme to deprive him of those rights and that the events were timed so that "he would be put to the most extreme pressure and expense" just before the 2006 school board election. Furthermore, Cook asserts that the backdrop for the defendants' actions was "the ever-present issue of race in Randolph County" and a pattern of racial

discrimination that had been ongoing for many years in Randolph County.

Cook argues that he suffered injuries that § 1985(3) was designed to compensate, and one of the decisions he relies on to support that argument is Haddle v. Garrison, 525 U.S. 121, 119 S. Ct. 489 (1998). It was a § 1985(2) case involving allegations that the defendants had conspired to have the plaintiff fired from his job in retaliation for his obeying a federal grand jury subpoena, and that they did so to deter him from testifying at a federal criminal trial. Id. at 122, 119 S. Ct. at 490. The Supreme Court held that a plaintiff did not have to show deprivation of a constitutionally protected liberty interest to state a claim for damages under § 1985(2) because "[t]he gist of the wrong at which § 1985(2) is directed is not deprivation of property, but intimidation or retaliation against witnesses in federal-court proceedings." Id. at 125, 119 S. Ct. at 492. Unlike Haddle, this is not a § 1985(2) case. Cook does not allege that the defendants retaliated against him because he served as a witness in any court proceedings. Instead, he has brought a § 1985(3) claim, and that requires proof of "the violation of a serious constitutional right" as well as invidious intent. Trawinski, 313 F.3d at 1299.

The other decision Cook relies on is Chavis v. Clayton County Sch. Dist., 300 F.3d 1288 (11th Cir. 2002). Like Haddle, Chavis involved a § 1985(2) claim

31

of racially discriminatory retaliation for testimony given in court proceedings. See id. at 1293. It is distinguishable from this case on the same grounds.

In the present case Cook alleges that the defendants removed him from his voting district, which injured him under §1985(3) because voting rights and the right to run for public office are core concerns under that statute. He points again to the fact that he hired legal counsel to vindicate those core rights. Voting rights and the right to run for public office are core constitutional rights; however, for the reasons we have already discussed, an attempted deprivation of constitutional or statutory rights is not the same as an actual deprivation, see Villanueva, 723 F.2d at 418–19. And incurring legal fees to vindicate rights does not itself establish that those rights were violated. See Andree, 818 F.2d at 1312.

In addition to his §§ 1983 and 1985 claims, Cook included in his second amended complaint a claim alleging discrimination in violation of 42 U.S.C. § 1981. "To state a claim of race discrimination under § 1981, plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1270 (11th Cir. 2004). The activities enumerated in the statute are the right to make and enforce contracts, to

32

sue, and to give evidence. Id.; see also 42 U.S.C. § 1981.[8] In his second amended complaint the only one of those enumerated activities Cook mentions in connection with his § 1981 claim is "Plaintiff's rights to make, enforce, and enter into a contract." The statutory language actually is "make and enforce contracts," 42 U.S.C. § 1981(a), but in any event Cook has not explained how the attempt to change his voter registration affected his rights to make, enforce, or do anything else with a contract. He did not explain the claim to the district court, which concluded that Cook had failed to present evidence that the defendants had deprived him of any rights protected by § 1981. Nor did Cook attempt to explain the claim to us in his briefs or at oral argument. If claims were children, this one has been neglected enough to qualify for foster care. The neglected, unsupported claim fails. See Kinnon v. Arcoub, Gopman & Assocs., Inc., 490 F.3d 886, 890 (11th Cir. 2007) ("To state a claim under § 1981, a plaintiff must identify an impaired contractual relationship under which the plaintiff has rights.") (alteration and quotation marks omitted).

Finally, Cook also asserted claims that his due process and equal protection

---

[8] Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

rights under the Georgia Constitution had been violated. Those claims mirror the corresponding federal constitutional ones. See Cherokee County v. Greater Atlanta Homebuilders Ass'n, 566 S.E.2d 470, 473 n.1(Ga. Ct. App. 2002) ("The equal protection guarantees of the Georgia and federal constitutions are coextensive. The due process guarantees are substantively identical.") (internal citation omitted). They fail for the same reasons.

**AFFIRMED.**