**ALTENEL, INC., et al., Plaintiffs,**

v.

**MILLENNIUM PARTNERS, L.L.C., et al., Defendants.**

**Case No. 11–22806–CV.**

United States District Court, S.D. Florida.

March 12, 2013.

---

· Walter Samuel Holland, Miami, FL, for Plaintiffs.·

Rebecca Jean Williams, Lawrence S. Gordon, Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Sche, Hollywood, FL, Michael James Henderson, Krinzman, Huss & Lubetsky, James Knight Parker, Jr., John Rodriguez, Boyd Richards Parker & Colonnelli, Miami, FL, for Defendants.

## *ORDER*

KATHLEEN M. WILLIAMS, District Judge.

**THIS MATTER** is before the Court on motions to dismiss filed by two sets of Defendants that raise nearly identical issues (DE 67, DE 73). This is an action for fraud, breach of contract, and alleged violations of state securities laws, which was initially filed in state court on May 18, 2010 but was subsequently removed to federal court. For the following reasons, Defendants' motions are granted in part and denied in part.

### I. BACKGROUND

The Plaintiffs—Altenel, Inc., Daniel Bayak, Carlos Flores, DS 3202/3511, Inc., GS 3605/3308, Inc., Donseg Condo–Hotel Corp., Charles E. Fombrun, Jose Luis Gardado, Flora Irma Partida Hernandez, Ray Development Corp., Rosas & Rosas Florida Corp., and Bozena Sawa—are six individuals and six corporate entities that

purchased hotel condominium units between 2002 and 2005 in a real estate development known as the Millennium Tower project. The building consists of a building located in downtown Miami, Florida. The building contains 84 hotel condominium units, as well as 221 ordinary hotel units operated by Defendant Four Seasons Hotel Limited ("Four Seasons")—a luxury hotel chain—and a number of private condominium residences.

The project was owned and developed by three companies that Plaintiffs allege were "integrated into a unified business structure" and acted as "agents for one another"—Defendant Terremark Brickell II, Ltd. ("Terremark"), Defendant Millennium Partners, LLC ("Millennium"), and Defendant FSM Hotel, L.L.C. ("FSM"). (Compl. ¶¶ 3–7.) Those entities, along with two others that were created as a result of the transaction—Defendant Millennium Partners Florida Property Management, LLC ("Millennium Management") and Defendant Millennium Tower Condominium Hotel Association, Inc. (the "Condominium Association")—operate a joint enterprise and act as agents for each other. (Compl. ¶¶ 9–11.) Defendant Four Seasons runs the hotel operations.

To close on their units, Plaintiffs received and executed various transaction documents with the developer entities, which apparently included a prospectus, a deal summary, two declarations, and a purchase agreement. After taking possession of their units, Plaintiffs executed a rental program agreement with the Four Seasons. The agreement provided that the Four Seasons would manage and book guests in Plaintiffs' units and in exchange, the Defendants would deduct a daily access fee of approximately $70 and 20 percent of the rental revenue. Finally, to start the hotel operations, Millennium Management and the Condominium Association entered into various contracts purportedly for the benefit of the hotel condominium owners. In their 136 page complaint, which is broken out into 19 individual counts and presents a hodgepodge of fraud claims, contract-related claims, and securities claims, Plaintiffs bring suit against the six Defendants named above.

## A. Fraud Claims

Plaintiffs' fraud counts essentially contend that two types of misrepresentations induced them to purchase their units and execute the rental agreements.[1] First,

1. Count I alleges the fraudulent design of condominium documents insofar the condominium documents suggested that their units would be an integral part of the Four Seasons hotel operations. (Compl. ¶¶ 55–56.) Plaintiffs contend that in actuality, the transaction documents afforded them no rights and that the investment in their units was unprofitable. (DE 87, at 24.) *Count III, fraud in marketing,* alleges that Defendants made statements that fraudulently induced Plaintiffs into purchasing hotel condominium units by marketing them as *investments.* (Compl. ¶¶ 68–82.) Count IV, fraudulent inducement, asserts that Terremark, Millennium, and the Four Seasons made fraudulent misrepresentations to cause Plaintiffs to participate in the deal. (Compl. ¶¶ 83–92.) Count V, fraud in selling units, asserts that Four Seasons and other Defendants fraudulently concealed their intention to use Plaintiffs' hotel condominium units as surplus and extended stay units. (Compl. ¶¶ 93–101.) Count VI, for fraud, deceit, fraudulent concealment, asserts that Terremark, Millennium, and the Four Seasons used fraudulent techniques to sell hotel units while knowing that the units would fail as investments. (Compl. ¶¶ 102–107.) *Count XIII alleges that Defendants engaged in false and misleading advertising in marketing the* units. (Compl. ¶¶ 155–162.) Finally, Plaintiffs bring a claim under *Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"),* Section 501.203(3) of the Florida Statutes (Count XIV), based on Defendants' false and misleading practices prior to execution of purchase agreements and relating to rental programs and ask to rescind the contracts in light of Defendants' fraud (Count XIX). (Compl. ¶¶ 163–167, 215–220.)

while Plaintiffs believed that their units would be integral to the Four Seasons' hotel operations—i.e., that they were effectively purchasing a part of the Four Seasons Hotel—their units were ultimately marginalized. For instance, while Defendants were obligated to direct rental inquiries received by telephone to the hotel, Plaintiffs assert that Defendants failed to offer guests the option of a hotel condominium unit as they learned when, at some point in 2008, one or more of the Plaintiffs called to book a hotel condominium unit and was informed that there were none. (Compl. at 4.) More importantly, while Plaintiffs believed that their units would compete with hotel units, they were actually only filled when all other rooms in the hotel had been booked; rooms owned by Four Seasons rooms and Terremark were given first priority. Notably, Plaintiffs acknowledge that under their rental agreements, their units were not entitled to be treated equally with those owned by the hotel. (Compl. ¶ 40.)[2] Plaintiffs also suggest that Defendants agreed to assume responsibility for managing their units and failed to properly do so. (Compl. at 4.)

Second, Plaintiffs contend that because their units were underutilized, Defendants' pre-sale representations that their units would be profitable and were an investment (and a good one) were false. In particular, Defendants stated that Plaintiffs' "returns on invested capital [would] far exceed what could be earned in the universal marketplace of investments" while allegedly knowing that "the 84 Four Seasons Condominium Units were never going to generate substantial returns, let alone a profit." (Compl. at 2.) Defendants represented that the units would be a "good investment" and made certain projections about their profitability (even after expenses) although the units later performed worse than Plaintiffs had expected and Defendants had promised. Plaintiffs also reference monetary projections that had been made to them—a "return of 80% of the net rental charges for each unit after certain fixed expenses were deducted." (Compl. at 3, ¶¶ 71, 72(m), 72(o).) In subsequent briefing, however, Plaintiffs claim that there was never any guarantee of income and that "[t]his is not a suit on a guarantee. This is a suit for fraud for inducing Plaintiffs to buy into a condominium hotel that would not be operated as such." (Opp'n at 11.)[3] Nevertheless, it appears that Plaintiffs continue to assert that Defendants fraudulently characterized their purchases as investments.

As discussed below, it is unclear whether Plaintiffs' beliefs resulted from a misrepresentation made by any Defendant;

**2.** As discussed in more detail below, the agreement details the manner in which Plaintiffs' condominium hotel units were to be used and the services that the Defendants would provide. The rental agreement states, for instance, that the "rental of rooms in the Hotel shall be afforded priority over rental units in the Rental Program, including Subject Unit." (Compl. Ex. L at ¶ 3.2(a).) The purchase agreement is an exhibit to the Third Amended Complaint (DE 77–2) and has also been provided by FSM Terremark, and Millennium at DE 73–1. The rental purchase agreement is attached as Exhibit L to the Third Amended Complaint at DE 75–12. Other documents, such as the prospectus (Compl. Ex. O), have also been provided by

Plaintiffs. Accordingly, the Court may consider them in ruling on the motion to dismiss. *See, e.g., Day v. Taylor,* 400 F.3d 1272, 1275–76 (11th Cir.2005); *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir.2002) (citations omitted) *See Day v. Taylor,* 400 F.3d 1272, 1275–76 (11th Cir.2005); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir. 1991).

**3.** The rule in Florida is that "[a]n action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact." *Mejia v. Jurich,* 781 So.2d 1175, 1177 (Fla.Dist. Ct.App.2001) (citation omitted).

whether they resulted from oral statement by sales agents, written promises made in sales materials, or the obligations of the contracts themselves; and when and they were made and by whom.[4] According to Plaintiffs, it was unspecified written materials that gave them impression that the units would be part of "a legitimate hotel condominium operation." (Compl. ¶ 39; Opp'n at 4.) For instance, "condominium documents" made it appear "that Millennium would ensure that Plaintiffs' Condominium Hotel Units were an integral, fully-marketed and operating component of the Four Seasons Hotel." (Compl. at 3.) Consistent with this marketing concept, Plaintiffs were required to furnish their rooms as Four Seasons' hotel units, which cost a minimum of $30,000 per unit. Further, they paid an "access fee" so that hotel guests could occupy the units. And Plaintiffs' units cost more to purchase than similar condominium residences, suggesting that they had attendant benefits.

Purportedly, Plaintiffs had been given the impression that their units would be "competitive" with the hotel units in part because they were encouraged to make their units more attractive to prospective occupants by installing larger kitchenettes and other amenities. (Compl. ¶ 72(I).) Moreover, Plaintiffs were lured by Defendants' "world-class" brand name and were promised the benefits of Four Seasons arrangement, including reservation and registration system. (Compl. ¶ 72(m).) To illustrate their contention, Plaintiffs provided an e-mail to a non-party investor stating that "purchase of the hotel would be a "unique real estate investment opportunity." (Compl. ¶ 72.) Additionally, as mentioned above, Defendants discussed projected statements of income. And, while not set forth in the body of the Complaint, Plaintiffs' motion also references sales materials and prospectuses that might have been deceptive. Still other instances of misrepresentations seem to be premised on deductions that Plaintiffs made themselves based on the surrounding circumstances—physical and practical—of the deal. For instance, the condominium hotel units were physically separate from ordinary condominium units and had access to the hotel lobby and amenities, suggesting that the units were part of the hotel.

In sum, Plaintiffs assert that the fraud consisted of false representations that Plaintiffs' units would be "integral" to a "legitimate" hotel operation, that Plaintiffs would realize a profit, and that Defendants would properly manage their units by making them available to prospective lodgers. (Compl. at 4.) Those representations induced Plaintiffs to purchase their units at inflated prices and to execute the voluntary rental agreement. Defendants claim that on the face of the Complaint, the fraud allegations are barred by the economic loss doctrine (which prohibits tort actions if the alleged injury is the same as the one claimed in a the breach of a contract); are controverted by terms of the parties' agreement; are time-barred; and

---

4. The Court notes that after various conclusory allegations, the Complaint interjects citations to hundreds of pages of exhibits, which Plaintiffs argue in their briefing can provide additional factual support for their claims. (*See, e.g.,* Compl. ¶ 32 ("The purchasers ... were targeted ... to purchase Four Seasons Condominium units as investments which were to be folded into the Four Seasons Hotel Operations (EXHIBIT A, B, C, H, I, J, R).").) However, the documents are not discussed in their Complaint and it remains unclear how they are relevant, what misrepresentations any of them contain, and whether Plaintiffs received and relied on them. While the Court can consider documents attached to the complaint or incorporated by reference and while those documents may illuminate Plaintiffs' claims, it is not the Court's responsibility to ferret through the record to frame Plaintiffs' claims and match specific documents with specific allegations.

are not sufficiently pleaded under the heightened pleading standard applicable to fraud claims.

### B. Breach of Contract Claims

Next, Plaintiffs assert a number of contract-related claims.[5] The heart of these claims is the violation of specific provisions of the rental purchase agreement. The Complaint asserts that the Four Seasons and other Defendants failed to operate and manage a rental program. (Compl. ¶ 38(a)). In particular, they failed to "use reasonable commercial efforts to . . . establish practices designed to achieve an equitable treatment of the Subject Unit with other Hotel Residences Units in the Rental Program" (Compl. ¶ 38(b) (quoting Rental Purchase Agreement, DE 72–12 at 7)); failed to maintain a reservation system, market units, and facilitate reservations (Compl. ¶ 38(d-e) (quoting Rental Purchase Agreement, DE 72–12 at 7–8)); and failed to negotiate rental terms with lodgers, implement policies and procedures for the rental program, and establish daily rates (Compl. ¶ 38(f-h) (quoting Rental Purchase Agreement, DE 72–12, at 7)).

Plaintiffs seek to recover for those breaches against the Four Seasons (Count XVI). Extending those obligations to the other Defendants, Count VIII alleges that Millennium, FSM, the Four Seasons, and the Condominium Association conspired to breach the rental program agreement. (Compl. ¶¶ 114–122.)

In addition, Count XV claims that Millennium, Terremark, and the Four Seasons breached the "condominium documents" by failing to perform various obligations similar to those identified in Count XVI. (Compl. ¶¶ 168–169.) Likewise Count II of the Complaint contends that Terremark and Millennium failed to perform obligations under the "purchase agreement and condominium documents," such as adopting rules to register guests. (Compl. ¶¶ 59–64.)[6]

Next, Plaintiffs seek to enforce several contracts entered into by the condominium unit owners' association, and with respect to which Plaintiffs claim to be third-party beneficiaries. (Compl. ¶¶ 126, 135). Count IX asserts that the Condominium Association, which was created by Defen-

---

**5.** Count II alleges that Terremark and Millennium breached the purchase agreement. (Compl. ¶¶ 59–65.) Count VII alleges that the Condominium Association, which settled and was terminated as a Defendant (DE 121–130), breached fiduciary duties it owed. (Compl. ¶¶ 108–113.) Count IX alleges that several of the Defendants breached "the condominium and property management agreement." (Compl. ¶¶ 123.) A conspiracy count (Count VIII) contends that the Defendants acted in concert to breach the rental agreement. (Compl. ¶¶ 114–122.)

**6.** Although Defendants do not make the point in their briefing, certain of these allegations of contractual breaches overlap with the fraud claims. Most notably, Count XV alleges that "Millennium, Terremark and Four Seasons breach[ed] the condominium documents through failure to operate a legitimate condominium hotel operation," which is Plaintiffs' principal allegation of fraud. (Compl. at

115.) At various points in the Complaint, Plaintiffs allege that Defendants breached the agreements by engaging in fraudulent conduct: engaging in false marketing, making misrepresentations, competing with Plaintiffs (and failing to inform the purchasers that Defendants would do so), inducing Plaintiffs to abide by "a grab bag of overreaching, fraud, deception, trickery, swindling and fraudulent conveyances of nothing more than airspace," using contract documents to "grant[] certain phantom, illusory rights to Plaintiffs," and failing to justify expenses." (Compl. ¶¶ 64(e)-(o); 169(e)-(o).) Plaintiffs also allege that the Defendants collected fees due under the contracts, but that they did not do enough to earn them. These allegations are duplicative of Plaintiffs' fraud claims. Indeed, rather than asserting a breach of the contracts at issue, Plaintiffs' breach of contract counts apparently offer bases to *avoid* enforcement of them and to recover their purchase expenses.

dants through the deal, entered into a property management· agreement with Millennium Management and a condominium license agreement with the Four Seasons. Plaintiffs allege that although obligated by the management agreement to engage vendors to provide management services, hire employees, and provide hotel services, Millennium Management failed to do so. (Compl. ¶¶ 130–131.) In Count X, Plaintiffs claim that the Four Seasons made similar promises to provide hotel-related services that it failed to do. (Compl. ¶¶ 134–138.) Plaintiffs further claim that the Four Seasons violated a license agreement by agreeing to license the·Four Seasons' name and logo and then prohibiting the Condominium Association and unit owners from using them. (Compl. ¶¶ 129, 136(c).) Finally, Count XII alleges a breach of the covenant of good faith and fair dealing, asserting that with respect to all agreements at issue, Defendants have put their own interests above those of the Plaintiffs. (Compl. ¶¶ 149.)

With respect to these claims, Defendants contend, among other things, that Plaintiffs fail to properly identify the contracts and the breached provisions in order to properly state a claim; that there can be no conspiracy among the Defendants given allegations that Defendants were agents for each other; that the claims are time-barred; that Plaintiffs lack standing as third-party beneficiaries to sue under the agreements executed by the Condominium Association; and that Plaintiffs' alleged violations of the covenant of good faith and fair dealing contradict the terms of the contracts at issue.

### C. Securities Violations

Third, Plaintiffs bring a securities claim against Defendants Terremark, Millennium, and Four Seasons (Count XVII), contending that Plaintiffs purchased their units as securities (and that the purchase agreements were "investment contracts") that are subject to the requirements of Florida's securities laws. (Compl. ¶¶ 177–207.) By failing to register the purchase agreements, provide a compliant prospectus, or obtain proper licenses, the Defendants allegedly violated those laws. Defendants contend that the claim is barred by a two-year statute of limitations that began to run when Plaintiffs purchased their units. *See* FLA. STAT. § 95.11(4)(e).

### D. Accounting

Finally, based on all of the other counts and the complexity of damages, Plaintiffs seek an accounting (Count XI) "to ensure that the Plaintiffs are being paid when their units are rented and that the [rental purchase agreement] is being fairly and equitably implemented in all respects." (Compl. ¶¶ 144–45.) Defendants contend that the claim is time-barred under a four year statute of limitations. *See* FLA. STAT. § 95.11(3)(k).

## II. DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Court's consideration is limited to the allegations presented. *See GSW, Inc. v. Long Cnty.,* 999 F.2d 1508, 1510 (11th Cir.1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir.2010); *see also Roberts v. Fla. Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir.1998). While a plaintiff need not provide "detailed factual allegations," the allegations must consist of

"more than labels and conclusions." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6) does not allow dismissal because the court anticipates "actual proof of those facts is impossible;" however, the "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir.2007) (quoting *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955). Nevertheless, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiffs allegations." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). Further, as is applicable to some of the arguments made in Defendants' motions, dismissal on the basis of a statute of limitations is appropriate only where the basis for dismissal is apparent from the face of the complaint. *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir.2005) (citations omitted).

In addition to the aforementioned requirements, Plaintiffs' fraud claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). That rule is "satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001) (internal quotation omitted). The complaint must alert the defendants "to the precise misconduct with which they are charged." *Id.* (internal quotation omitted). Beyond that, the rule has an impor-

tant role in protecting defendants "against spurious charges of immoral and fraudulent behavior." *Id.* (internal quotation omitted).

## A. Fraud Claims

Defendants make various arguments in their motions with respect to the fraud claims. As discussed below, some of the bases for dismissal stem from Plaintiffs' failure to adequately describe the fraud, while others focus on the relation between the tort claims and the contract.

### 1. Rule 9(b)'s Heightened Pleading Standard

■ As a starting point, it is evident that Plaintiffs have failed to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which compels dismissal. As described above, Plaintiffs' fraud claims allege, on the whole, that the hotel condominium units they purchased were not used to the degree (or managed to the standard) they had been led to believe by Defendants would occur. The Complaint asserts that "Defendants lied in regards to Plaintiffs' units being an integral part of the Four Seasons Hotel, they lied as to their intentions in successfully operating and marketing the units, they lied in describing and selling the Four Seasons Condominium Hotel as a 'real estate investment' and they continued to do so until the entirety of the fraud was recognized by Plaintiffs." (Compl. at 5.) It describes an "agenda" that includes "clearly stat[ing] the Defendants were creating a legitimate Condominium Hotel in conjunction with a Four Seasons Hotel," representing that "said units would be integrated into the Four Seasons Hotel operations," and deceptively "market[ing] Four Seasons Condominium Hotel Units as 'real estate investments.'" (Compl. ¶ 36.) The Complaint reiterates that the units were "unanimously viewed by purchasers and sellers as investments."

(Compl. ¶ 33.) And finally, it asserts that the units failed to produce the expected return. (Compl. ¶ 45.)

Yet regardless of how many words and pages Plaintiffs use to make those assertions,[7] the Complaint is fatally silent as to the salient details regarding the content of representations or omissions: when any statement was made; how it was false; whether it furthered any part of the fraudulent scheme; who it was said by; whether that person spoke for any of the Defendants; and which of the Plaintiffs received the misinformation and acted upon it. *See Leonard v. Stuart–James Co., Inc.*, 742 F.Supp. 653, 659 (N.D.Ga.1990) (dismissing securities fraud claims where "[n]o allegation describe[d] specifically when, where, by whom, or specifically what that misrepresentation was"). Representative of the Complaint's pleading failures is Paragraph 71, which provides that "it was a common practice" for "Sales Agents" to make "fraudulent representations" that rooms could generate up to $1,000 per day in revenue. These statements are not further described as to time or place or ascribed to any particular person and Plaintiffs acknowledge that they are not suing for a false guarantee of income. (*See* Opp'n at 11.) Also, without further elaboration, the Complaint baldly states that "representations were made to each of the Plaintiffs by the Sales Agents and others regarding making an investment," including "[f]alse projections . . . of the anticipated occupancy," whatever they might have been. (Compl. ¶ 72.) It also claims that other "oral and tangible representations" were "false, misleading and contradictory to the true intentions of Defendants" without providing what these representations were, who made them, or how they were false. (Compl. ¶ 34.)[8] Similarly, the Complaint lists dozens of individuals who allegedly engaged in deceptive means, but is silent as to what any one of them did. (Compl. ¶ 165.) And, instead of being specific, the period in which the statements were made "includes not only the time frame leading up to the date for each Purchase Agreement herein but also leading up to the closing date as well." (Compl. ¶ 86.) Thus, the great majority of Plaintiffs' allegations involve only generalized conduct, are conclusory in nature, and do not sufficiently describe the who, what, where, when, and why of the fraud.

Further, the Complaint's disorganization and Plaintiffs' method of shotgun pleading—in which the fraud counts reallege dozens of preceding paragraphs by reference, sometimes capturing the same paragraphs multiple times and often incorporating inconsistent counts pleaded in the alternative (*see, e.g.*, Compl. ¶¶ 68, 155)—make it is impossible to determine which allegations are relevant to which claims. *See Cook v. Randolph Cnty.*, 573 F.3d 1143, 1151 (11th Cir.2009) ("We have had much to say about shotgun pleadings, none

---

7. As is evident from the following discussion, Plaintiffs' complaint simultaneously provides too much and comes up short. "In a complaint subject to Rule 9(b)'s particularity requirement, plaintiffs retain the dual burden of providing sufficient particularity as to the fraud while maintaining a sense of brevity and clarity in the drafting of the claim, in accord with Rule 8." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006). In contrast to Plaintiffs' assertion that if anything, the Complaint "contains too much information" (DE 83, at 3), a torrent of factual assertions is insufficient if the particulars of the fraud are not alleged or if the requisite elements of a claim are absent.

8. Plaintiffs' briefing does not provide any additional information as to what these statements reference previously were. (*See* DE 87, at 15–16 (describing the "specific representations", which include, without additional detail, that "[t]he condominium hotel would be an integral part of the Four Seasons Hotel when there was never any intent for such")).

of which is favorable." (collecting authority)). Additionally, while the Defendants are alleged to have had different roles—constructing the building, marketing and selling the units, managing the development's hotel functions, and representing the condominium owners in an association structure—the Complaint does not distinguish among their conduct, undermining the notice function of Rule 9(b). *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1381 (11th Cir. 1997) (collecting authority). It thus "confuse[s] and obfuscate[s] each Defendant's conduct to the point where the particularity requirement of Rule 9(b) is not satisfied." *Fellner v. Cameron,* 10–cv–155, 2012 WL 1648886, at *4 (M.D.Fla. May 10, 2012) (citations omitted). While these deficiencies might be curable, several additional factors all taken together counsel that the fraud claims should be dismissed with prejudice.[9]

### 2. Economic Loss Doctrine

■ Defendants' briefing relies heavily on the application of the economic loss doctrine. In the absence of an independent tort, Florida's economic loss rule—which has its origins in products liability cases—prohibits tort claims where the parties have a contractual relationship and the alleged damages consist only of economic loss.[10] The rule forces parties in contractual privity to look to the contractual remedies of their agreement to receive the benefit of their bargain and is premised on the principle that contract remedies are more appropriate in such a situation. *See Topp, Inc. v. Uniden Am. Corp.,* 513 F.Supp.2d 1345, 1348 (S.D.Fla.2007); *Indem. Ins. Co. of N. Am. v. Am. Aviation,*

*Inc.,* 891 So.2d 532, 536–37 (Fla.2004) (stating that the rule applies "when the parties are in contractual privity and one party seeks to recover damages in tort;" that parties to a contract should be precluded from using tort law to obtain a better bargain than they negotiated; and that "parties in privity of contract are generally prohibited from recovering in tort for economic damages"); *Medalie v. FSC Secs. Corp.,* 87 F.Supp.2d 1295, 1299–1300 (S.D.Fla.2000) ("The doctrine provides that contract principles are more appropriate than tort principles for resolving economic loss claims without accompanying physical injury or injury to property other than that which is the subject of the contract."). Thus, to the extent that Plaintiffs seek to use fraud claims to hold Defendants liable for failing to perform their contractual duties, Defendants assert that the economic loss rule forecloses the claim. *See Topp, Inc.,* 513 F.Supp.2d at 1348–49 (holding that a claim for fraud must do more than "simply restate[ ] a claim for breach of contract" and that "[m]isrepresentations relating to the breaching party's performance under a contract do not give rise to an independent cause of action because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement" (collecting authority)).

■ The Court recognizes that there is an extremely close relationship between the fraud claims and the contract claims in this case. In addition to the overlapping similarities addressed above (*see* n. 6, *supra*), the Court briefly notes that the money damages sought are the same. (DE 87, at 22 ("Plaintiffs seek no extracontractual

---

9. The Court notes that Plaintiffs—now on their Third Amended Complaint—have had ample opportunity to state their claims, were put on notice of the deficiencies by previous motions to dismiss, and have not requested further leave to amend. (*See* DE 4, DE 11.)

10. In the products liability context, the rule applies to actions "involving a product which damages itself by reason of a defect in the product." *Moransais v. Heathman,* 744 So.2d 973, 984 (Fla.1999) (Wells, J., concurring).

or tort damages [with respect to the fraud claims].").) The ways in which Plaintiffs contend that Defendants breached their contractual obligations—failing "[t]o use reasonable commercial efforts ... to achieve an equitable treatment of [Plaintiffs'] units with other hotel residence units in the program," to provide marketing support and other services that would have resulted in additional bookings—mirror their claims for fraud. (DE 87, at 19–20.) Indeed, Plaintiffs claim to have discovered the fraud in 2008 when one or more of the Plaintiffs called to book a hotel condominium unit and was informed that it was not available, in violation of a provision of the rental agreement that required the Four Seasons to direct such inquiries directly to the hotel. (Compl. at 4; DE 75–12, at 8.) Moreover, Plaintiffs state in their briefing that certain fraud claims do not "arise[ ] from an oral representation" but from "the contracts and the condominium documents." (DE 87, at 11–12; *see also id.* at 12 n. 2 ("Here the misrepresentations came from the documents themselves and not by way of references, sales materials, or oral representations.").) In this regard, Plaintiffs contend that the contracts themselves contained misrepresentations, in part because Defendants ultimately failed to comply with their contractual promises to manage the units. (DE 87, at 12. ("Although [the hotel] operation was legitimately created on paper, it was not, by deliberate actions, fulfilled in reality ... statements contained in the documents ... were false, contradictory in nature, and fraudulent.").

Nevertheless, it is no longer the case that Plaintiffs' claims can be dismissed solely on the basis of economic loss. Just last week and subsequent to the parties' briefing, the Florida Supreme Court ruled in *Tiara Condominium Association, Inc. v. Marsh & McLennan Companies, Inc.,* 110 So.3d 399 (Fla.2013) (publication forthcoming) that "the economic loss rule is limited to products liability cases." *Id.* at 400. Correcting an "unprincipled expansion" of the rule, it receded from its holdings in prior cases, including *American Aviation,* which had foreclosed tort claims in all "circumstances when the parties are in contractual privity and one party seeks to recover in tort for matters arising from the contract." *Id.* at 401–02, 406–07, 405–07. With respect to its reasoning, the Court alluded to an "original limited intent" behind the rule and a fear of speculatively applying it to situations not guided by policy considerations unique to a product liability-type analysis. *Id.* at 405–07 (citing *Moransais,* 744 So.2d at 983). Thus, because this case does not center on a products liability claim, the Court concludes that the economic loss rule does not apply.[11]

---

11. The Court notes that before the Florida Supreme Court ruling, Plaintiffs' briefing had inartfully sought to apply a recognized exception to the economic loss rule where a tort committed independent of the contract—in this case, fraudulent inducement—is at issue. Some courts in Florida recognized that alternative pleading allows parties to seek to enforce a contract (by suing for a breach) and also assert that the contract is unenforceable as procured through fraud (through a fraudulent inducement claim). Moreover, because the inducement claim has different elements of proof—notably, it is not dependent on proving facts that breached the contract—it can stand on its own. *See, e.g., Comprehensive Care Corp. v. Katzman,* 8:09–cv–01375, 2010 WL 3190136, at *4 (M.D.Fla. July 30, 2010) (discussing contrary authority and concluding that a claim could proceed where the plaintiff alleged that the defendant committed fraud by never intending to perform under the parties' contract and, alternatively, that the defendant also breached the contract). On the other hand, some courts have been troubled by the reality that "almost any contract claim can be framed as a fraud in the inducement action." *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.,* 694 So.2d 74, 77–78 (Fla. Dist.Ct.App.1997) (quoting *Puff 'N Stuff of Winter Park v. Bell,* 683 So.2d 1176, 1179

### 3. Common Law Contract Principles

■ While the economic loss doctrine may no longer apply outside the product liability context, Justice Pariente's concurring opinion in the *Tiara Condominium Association* case makes clear that the ruling does not disturb the landscape of contract law; there remain other common law contract principles that may bar certain tort claims. *Id.* at 408 ("Basic common law principles already restrict the remedies available to parties who have specifically negotiated for those remedies, and ... our clarification of the economic loss rule's applicability does nothing to alter these common law concepts ... it is common law principles of contract, rather than the economic loss rule, that produce this result."). With this in mind, an examination of the contracts at issue demonstrates that Plaintiffs' tort claims must fail. In particular, the documents at issue delineate the Defendants' responsibilities, describe the manner in which Plaintiffs' units would be used, and disclaim the existence of earlier agreements or representations—all directly contradicting the very premise of Plaintiff's allegations of fraud.

For instance, while the Complaint states that the Defendants committed fraud by failing to disclose that Plaintiffs' units would not be used so long as the Four Seasons Hotel was below its maximum capacity (Compl. ¶ 44), the rental agreement provides that "rooms in the Hotel shall be afforded priority over rental of units in the Rental Program, including the Subject Unit" and that the Four Seasons may discriminate based on certain other criteria (DE 75–12, at 7). Also, while the Complaint asserts that Defendants represented the units to be a money-generating investment, the same agreement—which is the last one that Plaintiffs signed—states that

the hotel owner had not "made any statement or representations with respect to the economic or tax benefits of ownership of the Subject Unit" and had not made any statement guaranteeing the rates to be charged or the degree to which the units would ·be used. (DE 75–12, at 22–23.) And· lastly, the purchase agreement that Plaintiffs acknowledge signing stated that "oral representations"—to the extent they are at issue here—cannot be relied upon as correctly stating the representations of the developer;" that no representations had been made concerning "future profit [ ] or rental income" or the seller's "ability or willingness ... to assist Purchaser in renting or selling the Unit;" and that the agreement is the only one between the parties. (DE 73–1, at 2, 12.) These contract provisions directly contradict the alleged false promises: (1) that Defendants projected profitable returns and income; (2) that the purchases were investments; (3) that the units would be marketed as ordinary hotel rooms; and (4) that they would be filled with the same priority as the Four Seasons' own units.

Two theories support dismissal under these circumstances. First and most obvious is that allowing Plaintiffs to proceed with fraud claims contradicted by a subsequent agreement "is to invite contracting parties to make agreements ... and then avoid them simply by taking the stand and swearing that they relied on some other statement." *Topp, Inc.*, 513 F.Supp.2d at 1350 (quotation omitted); *Dentaland, P.A. v. St. Stephen Ltd. Partnership*, 729 So.2d 1012 (Fla.Dist.Ct.App.1999) ("[A] party to a contract may not recover in fraud for alleged oral misrepresentations that have been adequately addressed or expressly contradicted in a later written contract." (collecting authority)). Where that hap-

(Fla.Dist.Ct.App.1996) (Harris, J., concurring)). In any event, the Court does not need to make any determination of whether prior courts' interpretation of the economic loss rule would have foreclosed Plaintiffs' claims.

pens, courts have dismissed claims at the pleading stage. For example, in *Garcia v. Santa Maria Resort, Inc.*, 528 F.Supp.2d 1283 (S.D.Fla.2007), the plaintiffs were precluded from claiming that their purchase of condominium units was an investment for purposes of federal securities laws where their purchase contracts stated that the units would be used for personal use and that they had no expectation of profits. *Id.* at 1292. Merger clauses—which are also contained in the contracts at issue here—can also override a claim that there were representations outside the contract and, in such cases, can justify dismissal. *Topp, Inc.*, 513 F.Supp.2d at 1348 (dismissing fraud claims in light of a merger clause since "[a] party cannot take a position contradictory to a contract that plainly and unambiguously states that there are no other agreements or representations other than those contained in the contract").

A second line of cases recognizes that the existence of contrary provisions makes reliance on the fraudulent misrepresentations unreasonable as a matter of law. *See, e.g., Silver v. Countrywide Home Loans, Inc.*, 760 F.Supp.2d 1330, 1341 (S.D.Fla.2011) (granting defendant's request for summary judgment on fraud claims because "[r]eliance upon oral statements at variance with the written documents was not reasonable as a matter of law"). This rationale negates an element a plaintiff must prove—i.e., reliance—to prevail on a fraud claim.

Against this, Plaintiffs argue that the Court should not consider the contract language in light of their assertion that fraud induced them to enter into those contracts. Florida courts have not consistently addressed this issue. In particular, there is a debate among courts as to whether a party can go behind a clear expression of what it had agreed to, even if that agreement was procured through fraud. On one

hand, some courts have concluded that the fraud may cast doubt on whether the party's assent to the terms was done knowingly or voluntarily, while others deem the contract language as demonstrative of the party's intent. *Compare, e.g., Gill v. Three Dimension Sys., Inc.*, 87 F.Supp.2d 1278, 1285 (M.D.Fla.2000) (allowing claims to proceed since condoning a "knowing fraud perpetrated to induce someone to enter into a contract ... makes no sense" (quotation omitted)); *with B & G Aventura, LLC v. G–Site Ltd. Partnership*, 97 So.3d 308, 309–310 (Fla.Dist.Ct.App.2012) (holding that a condominium purchaser's fraudulent inducement claim "fail[ed] as a matter of law because the alleged misrepresentations [were] adequately covered or expressly contradicted in a later written contract," which was the best evidence of the parties' intent (internal quotation and citations omitted)). On the other hand, there is a concern that merger clauses, without speaking specifically to the representations at issue, have the power to make "a fact [im]material if not included in the contract." *Gilchrist Timber Co. v. ITT Rayonier*, 127 F.3d 1390, 1395 (11th Cir.1997). Consequently, some courts have considered the degree to which the representations in the contract and those alleged to have been made as part of the fraud explicitly overlap. *See, e.g., B & G Aventura, LLC*, 97 So.3d at 310 (quoting *Greenwald v. Food Fair Stores Corp.*, 100 So.2d 200, 202 (Fla.Dist.Ct.App.1958)); *S & B Invs., LLC v. Motiva Enters., LLC*, No. 03–61993, 2004 WL 3250306, at *5 (S.D.Fla. Dec. 6, 2004); *Eclipse Med., Inc. v. Am. Hydro–Surgical Instruments, Inc.*, 262 F.Supp.2d 1334, 1341–1346 (S.D.Fla. 1999) ("It is patently unreasonable for the Distributors to rely on a promise that the Agreement would be renewed annually *ad infinitum* based on performance where the Agreement specifically and unambiguously creates only a single renewal term based on performance.").

▪ Regardless of whether such an exception would apply here, however, the same facts present a statute of limitations issue that prevents Plaintiffs from challenging the validity of the contracts. In Florida, fraud-based claims have a four-year statute of limitations running from the date that the fraud was, or with due diligence should have been, discovered. FLA. STAT. § 95.11(3)(j); § 95.031(2)(a). Claims under FDUTPA also expire after a four-year period running from the occurrence of the last element constituting the cause of action. *Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp.*, 581 F.Supp.2d 1215, 1220, 1223 (S.D.Fla.2008). Plaintiffs claim to have been unaware of the terms of the rental purchase agreement prior to closing, the last of which occurred in 2005. (Compl. ¶¶ 17–26, 37.) [12] Yet, "[o]nce a party receives a contract expressly contradicting the previous assurances and representations, the party should be aware that something is amiss." *Trilogy Props. LLC v. SB Hotel Assocs. LLC,* No. 09–21406, 2010 WL 7411912, at *9 (S.D.Fla. Dec. 23, 2010). As explained above, the terms of the contracts here are contrary to the premise of the fraud. On this basis alone, Plaintiffs should have been alerted to the existence of the fraud from the time they signed the transaction documents. Because they filed suit five years later, they cannot avoid the operation of statute of limitations at this juncture.

In sum, because the circumstances of the fraud have not been pleaded with particularity, because the misrepresentations are contradicted by contracts entered into by the Plaintiffs, and because their fraud claims are time-barred, Plaintiffs' fraud claims (and others dependent on them) cannot stand. Accordingly, Counts I, III, IV, V, VI, XIII, XIV, and XIX will be dismissed with prejudice.

### B. Contract Claims

▪ Defendants raise several grounds for dismissal of Plaintiffs' contract claims (Counts II, IX, X, XV, XVI). Principally, they argue that the Complaint fails to adequately describe the claimed breaches. Unlike allegations of fraud, however, contract claims are only subject to the liberal pleading requirements of Federal Rule of Civil Procedure 8(a), which asks whether the defendant has been put on notice of the plaintiff's claim. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Under that rule, "the alleged facts need not be spelled out with exactitude, nor must recovery appear imminent." *Quality Foods de Centro America v. Latin American Agribusiness Dev. Corp.,* 711 F.2d 989, 995 (11th Cir. 1983) (citation omitted). Under the standard articulated by *Twombly,* "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 677, 129 S.Ct. 1937 (citation omitted).[13]

---

12. They also claim that the fraud was concealed until 2008 when they uncovered certain facts about rental revenue. (Compl. ¶¶ 42–50; DE 83 at 12.) However, the discovery rule applies an objective standard and turns on when the fraud should have been discovered rather than when Plaintiffs actually discovered it.

13. As the Seventh Circuit extrapolated from the decisions of *Twombly, Iqbal,* and *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167

L.Ed.2d 1081 (2007), Rule 8 has only several requirements:

First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiffs factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiffs claim. Third, in considering the plaintiffs factual allegations, courts should not accept as adequate abstract reci-

The Court notes that while Plaintiffs often do not identify the breached provisions with particularity (and while the Complaint is not a model of clarity), they do describe their substance, identify the Defendants they seek to recover against, and attach copies of the contracts they are suing under.[14] On the whole, the Complaint alleges, expressly or inferentially, the elements of a breach of contract claim and provide sufficient factual support to render those claims plausible. With respect to their breach of the covenant of good faith and fair dealing claim (Count XII), Plaintiffs have identified several ways in which Defendants allegedly misused the discretion afforded to them under the contracts and Defendants have not identified authority requiring more. (Compl. ¶ 151.) Additionally, while Four Seasons contends that claims based on breaches of the rental agreement are barred by Florida's five year statute of limitations applicable to contract actions (DE 67, at 10), there are insufficient facts at this stage to determine when the breaches occurred and when Plaintiffs should have learned of them. Thus, Plaintiffs may seek money damages for any alleged breach to the extent they are supported by the terms of the contract and evidence of a material breach. *See Beck v. Lazard Freres & Co., LLC,* 175 F.3d 913, 914 (11th Cir.1999).[15]

· The Court similarly finds that Plaintiffs' allegations sufficiently state their breach of contract claims brought as third-party beneficiaries. Such a claim requires a plaintiff to establish "(1) the existence of a contract in which plaintiff is not a party, (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit the plaintiff, (3) breach of that contract by one of the parties and (4) damages to plaintiff resulting from the breach." *Lapidus v. NCL Am. LLC,* No. 12–21183, 2012 WL 2193055, at *6 (S.D.Fla. June 14, 2012) (quotation omitted). Defendants claim that while Plaintiffs have pleaded that they are intended beneficiaries, they have not specifically alleged that the contracts were intended to benefit them. Plaintiffs, however, have claimed that the condominium association was created for the benefit of the condominium unit owners and that it was responsible for executing service contracts on their behalf. (Compl. ¶ 10.) Defendants have not articulated any point regarding the content of the contracts themselves that would preclude a third-party beneficiary claim. On balance, the Court finds that the allegations are sufficient. *See Platinum Estates, Inc. v. TD Bank, N.A.,* No. 11–60670, 2012 WL 760791, at *3 (S.D.Fla. Mar. 8, 2012) ("The Court will not dismiss an action simply because Plaintiffs fail to use 'magic words' when the pleading is otherwise sufficient." (quoting *Cabrera v. Martin,* 973 F.2d 735, 745 (9th Cir.1992))). The Court notes, however,

tations of the elements of a cause of action or conclusory legal statements. *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009).

**14.** At various points, Plaintiffs allege violations of the "condominium documents." Although that term is not defined, the Complaint references several documents that were part of the transaction.

**15.** Defendants have not moved for a more definite statement or identified any authority

to support their position. (*See* DE 72, at 30.) Additionally, the Defendants have not sought to dismiss any of the claimed breaches on the basis that they are not terms of performance required by the contracts. *See* n. 6, *supra.* Nevertheless, if the Defendants are uncertain of the allegations contained in the Complaint, they may reasonably learn of them through discovery. They may also defend against them on the ground that Defendants believe they are not actually parties to a particular contract or that the contracts at issue did not contain such a term of performance.

that while it accepts Plaintiff's allegations as true in considering Defendants' motions to dismiss, such a claim ultimately may not be successful notwithstanding the fact that Plaintiffs are owners of units in the building. *See, e.g., Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.,* 647 So.2d 1028, 1030–31 (Fla.Dist.Ct.App.1994) (holding that non-parties to contracts have no right to sue under them unless the contract unless "the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong"); *Clearwater Key Ass'n–S. Beach, Inc. v. Thacker,* 431 So.2d 641, 645 (Fla. Dist.Ct.App.1983) (holding that condominium owners could allege that they were third-party beneficiaries under a management contract entered into by their condominium association but could not prevail on summary judgment because the agreement was not made "*directly* and *primarily* " for their benefit).[16]

▮▮▮ While Plaintiffs' breach of contract claims are sufficiently stated, the contract-based conspiracy claim (Count VIII) cannot proceed. Civil conspiracy, under Florida law, requires "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Charles v. Fla. Foreclosure Placement Ctr., LLC,* 988 So.2d 1157, 1159–60 (Fla. Dist.Ct.App.2008). Because the cause of action requires an agreement between a multitude of independent actors, "it is not

possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir.2000). The complaint alleges that the Defendants operated a joint enterprise and worked as agents for each other. Plaintiffs have not cited the Court to any authority to withstand dismissal. (*See* DE 87, at 29–30.) Thus, even assuming that a conspiracy to breach a contract is an actionable claim, this line of authority bars it. Accordingly, Count VIII will be dismissed with prejudice.

## C. Securities Claim

Finally, Plaintiffs bring a claim under the Florida Securities Act (Count XVII). The Complaint asserts that the Defendants marketed and sold securities without registering them, filing a prospectus, or obtaining a sales permit, in violation of Section 517 of the Florida Statutes. Defendants argue that the claim is time-barred because it is governed by a two-year statute of limitations period that began to accrue when Plaintiffs closed on their units, the last of which occurred in 2005. Plaintiffs do not dispute that the statute of limitations period is applicable, but contend in their Complaint that the period did not begin to accrue until mid-2008. Plaintiffs argue that it was not until 2008 that they first discovered the facts giving rise to the cause of action, since they did not have an understanding of securities laws, they relied on Defendants' misrepresentations that their purchases were not securities, and they did not understand that their purchases were securi-

---

16. In this regard, Plaintiffs have asserted that "[t]he Condominium Documents clearly make the Association the representative of the Condominium Hotel unit owners for management purposes. To the knowledge of undersigned counsel, this is true for every condominium in the state of Florida. For every condominium,

there must be an association. The Association acts for and has a fiduciary duty to the unit owners. It has no other purpose. The unit owners are third party beneficiaries of every contract entered into by the Association." (DE 87, at 31.)

ties. Their Complaint avers as much, although it also states that Plaintiffs were led to believe that they were making an investment. (Compl. ¶¶ 177–198.) In briefing, Plaintiffs clarify that they did not have notice of their claim until their attorney reviewed the transaction documents. (DE 87, at 44.)

The two-year clock on a claim under the Florida Securities Act begins to run from the time when a plaintiff discovered or should have discovered the violation—i.e., when it had constructive notice of the facts giving rise to the claim. FLA. STAT. § 95.11(4)(e). "The trigger for the 'violation' of the Florida securities act occurs when the purchaser contracts to buy the security." *Barnebey v. E.F. Hutton & Co.,* 715 F.Supp. 1512, 1526 (M.D.Fla.1989) (citation omitted). Nevertheless, Plaintiffs point to their allegations that they were unaware that their purchases constituted securities and rely on the general proposition that allegations of the complaint must be accepted as true and that when a plaintiff should have discovered the basis of his or her claim is an issue that should be left for the jury. (DE 87, at 42.) Such allegations have been held by some courts to be sufficient. *See, e.g., Trilogy Props., LLC,* 2010 WL 7411912, at *13 ("The date on which the plaintiffs should have reasonably discovered that their investment contracts were unregistered is a question of fact. This is a question best left for summary judgment or trial."); *Williams v. Bear Stearns & Co.,* 725 So.2d 397, 401 (Fla. Dist.Ct.App.1998).

■■■ However, the Court is not bound to accept Plaintiffs legal conclusions as to when their cause of action began to accrue since transaction documents at issue, which have been provided to the Court, reveal that Plaintiffs should have had no-

tice of their claims in 2005.[17] The decision of Florida's Third District Court of Appeals in *GLK, L.P. v. Four Seasons Hotel Ltd.,* 22 So.3d 635 (Fla.Dist.Ct.App.2009) is particularly instructive in this regard. There, purchasers of real estate condominium units in the Millennium Tower brought suit against two of the Defendants in this action, Four Seasons Hotel Limited and Terremark Brickell II, Ltd. They claimed that the nature of the security was "not easily recognizable," that the defendants' misrepresentations prevented them from discovering the violation, and that they were unaware of the fact that they had purchased "securities" until they read a newspaper article suggesting otherwise. *Id.* at 636–67.

The appellate court affirmed the trial court's dismissal of the complaint, holding that the two-year statute of limitations applicable to a cause of action for selling an unregistered security begins to run from the date of the sale on the ground that "[a] seller of securities cannot conceal the fact that the securities he sells are not registered." *Id.* at 637–38 (quotation omitted). In light of the documentation that had been provided to plaintiffs and the fact that non-registration is readily determinable, the plaintiffs—while "blamelessly ignorant"—possessed the "factual information to form the basis of their cause of action" by the time of their transaction. *Id.* (citation omitted). Thus, the plaintiffs had notice of their claim at time of closing when they should have been aware that their purchases constituted securities that were unregistered.

Given the similarities, the Court finds that dismissal is proper in this instance. As in *GLK,* the Court has before it the key documents Plaintiffs claim to have relied

17. The Complaint states summarily that "Plaintiffs, even with the exercise of due diligence could not have and should not have discovered the facts giving rise to this cause of action within two years." (Compl. ¶ 201.)

on during the course of the transaction. And, given those documents, the Plaintiffs cannot claim that a reasonable person would have not learned until three years later that their units qualified as the purchase of securities. Accordingly, Count XVII will be dismissed with prejudice as time-barred.

### D. Rescission

Because Plaintiffs have not identified a single false or misleading statement in advertising or promotional materials, the Court will dismiss Count XVII, which allows for rescission of a contract procured through a "material statement of information that is false or misleading and published by or under authority from the developer in advertising and promotional materials." FLA. STAT. § 718.506. Plaintiffs have conceded that the claim is time-barred with respect to all but one Plaintiff. (DE 87, at 45.)

### E. Accounting Claim

Finally, Plaintiffs seek an equitable accounting (Count XI) to determine amounts due to them. Defendants assert that such a claim is time-barred under Section 95.11(3)(e), which provides a four-year statute of limitations for equitable actions on contracts. (DE 73, at 34.) Plaintiffs claim that "Defendants' total mismanagement and actual fraud in the management of the [rental agreement] was not discovered until mid–2008." (DE 87, at 32.) Neither side, however, has articulated an argument to support their respective assertions.

█ In any event, because Plaintiffs are left with breach of contract claims, the Court finds that they are not entitled to an accounting. *See Zaki Kulaibee Enter. v. McFlicker,* 788 F.Supp.2d 1363, 1370–71 (S.D.Fla.2011) ("Generally, where a party may obtain a money judgment for breach of contract, it has an adequate remedy at law, which precludes the need to impose an equitable remedy." (citations omitted));

*Chiron v. Isram Wholesale Tours and Travel Ltd.,* 519 So.2d 1102 (Fla.Dist.Ct. App.1988) (affirming dismissal of accounting claim where the complaint failed to show "neither complexity nor inadequacy of a legal remedy"). Accordingly, Count XI will be dismissed with prejudice.

### III. CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

(1) Defendants' Motions to Dismiss (DE 67, DE 73) are **GRANTED IN PART** and **DENIED IN PART.** Counts I, III, IV, V, VI, VIII, XI, XIII, XIV, XVII, and XIX are **DISMISSED WITH PREJUDICE.**

(2) Defendants shall answer the Complaint within fourteen days after this order is entered, pursuant to Federal Rule of Civil Procedure 12(a)(4)(A).

(3) This matter is set for a status conference before the Honorable Kathleen Williams at the United States District Court, 400 North Miami Avenue, Room 11–3, Miami, Florida on April 12, 2013 at 4:00 p.m.